UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANDREA HINES,<br><br>                    Plaintiff,<br><br>       v.<br><br>WALMART, INC.,<br><br>                    Defendant. | CASE NO. 2:24-cv-01323-GJL<br><br>ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter is before the Court with the parties' consent and on Defendant Walmart's Motion for Summary Judgment. Dkts. 14, 15, 16.

Plaintiff Andrea Hines brings suit against Defendant, alleging that she was injured when she tripped on an exposed PVC pipe in a landscape planter at one of Defendant's stores. Dkt. 1-1 at 3. Plaintiff alleges that Defendant negligently failed to maintain its business premises by removing or warning Plaintiff of the pipe. *Id*. at 3–4.

Defendant filed its Motion for Summary Judgment (the "Motion") on March 13, 2025, arguing that the PVC pipe was not an unreasonably dangerous condition and, even if it was, the open and obvious nature of the PVC pipe precludes liability because Plaintiff assumed the risk of

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

tripping when she crossed the parking strip. Dkt. 14. Because there are material disputes of fact as to whether the exposed PVC pipe was an unreasonably dangerous condition and whether it was obvious to Plaintiff, Defendant's Motion (Dkt. 14) is **DENIED**.

## I.   BACKGROUND

On April 21, 2021, Plaintiff went shopping at one of Defendant's stores in Port Orchard, Washington, along with her then husband and their children. Dkt. 1-1 at 3; Dkt. 13-1 at 3–4. Plaintiff exited her vehicle, which was backed into a parking space abutting a landscape planter with foliage. *Id.* at 4. Plaintiff began walking towards a walkway located behind the vehicle and planting strip, as shown in the image below.



Dkt. 13-2; Dkt. 13-1 at 3–4; Dkt. 1-1 at 3–4.

Plaintiff alleges that, while walking through the planting strip so that she could access the walkway, her foot struck a PVC irrigation joint over two inches wide, protruding roughly one inch above the ground (the "PVC Pipe"), causing her to trip and fall. Dkt. 1-1 at 3–4; Dkt. 15-3

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

at 3–4. Plaintiff ultimately suffered a right distal tibial shaft fracture with lateral malleolus fracture and syndesmotic disruption, requiring surgery. Dkt. 15-3 at 5.

## II. DISCUSSION

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the material facts before the court and the moving party is entitled to judgment as a matter of law. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1136 (9th Cir. 1975), *overruled on other grounds by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990). Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e).

Where there is a complete failure of proof concerning an essential element of the non-moving party's case on which the nonmoving party has the burden of proof, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986) ("the judge must view the evidence presented through the prism of the substantive evidentiary burden"). However, when presented with a motion for summary judgment, the court shall review the

pleadings and evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255 (internal citation omitted).

The opposing party cannot rest solely on its pleadings but must produce significant, probative evidence in the form of affidavits, and/or admissible discovery material that would allow a reasonable jury to find in its favor. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, n.11 (citing Rule 56(e)); *Anderson*, 477 U.S. at 249–50. In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). However, weighing of evidence and drawing legitimate inferences from facts are jury functions, and not the function of the court. *See United Steel Workers of America v. Phelps Dodge Corps.*, 865 F.2d 1539, 1542 (9th Cir. 1989).

A.     **Premises Liability for Negligence**

Washington negligence law governs this matter. "Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural rules." *Cuprite Mine Partners LLC v. Anderson*, 809 F.3d 548, 554 (9th Cir. 2015) (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)). The "procedural aspects of summary judgment" are governed by the Federal Rules of Civil Procedure, and "the law of the forum controls the substantive issues." *Id.* (citing C*aesar Elecs., Inc. v. Andrews*, 905 F.2d 287, 290 n. 3 (9th Cir.1990). This Court applies Washington law as it believes the Washington State Supreme Court would apply it, predicting how the high court would rule "using intermediate appellate court decisions, statutes, and decisions from other jurisdictions as interpretive aids." *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003)

In Washington, "[a] cause of action for negligence requires the plaintiff to establish (1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury." *Woessner v. Home Depot USA, Inc.*, No. 2:22-CV-00275-JHC, 2023 WL 3293059, at *3 (W.D. Wash. May 5, 2023) (citing *Johnson v. Liquor & Cannabis Bd.*, 197 Wash. 2d 605, 611, 486 P.3d 125 (2021)). According to premises liability theory, "the duty of care landowners owe to persons entering upon their land is governed by whether the person is a trespasser, a licensee, or an invitee." *Id.* at *4 (citing *Van Dinter v. City of Kennewick*, 121 Wash. 2d 38, 41, 846 P.2d 522 (1993)).

For invitees, such as Plaintiff here, Washington applies the duties set forth in the Restatement (Second) of Torts § 343:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

In its Motion for Summary Judgment, Defendant argues that Plaintiff's negligence claim fails because (1) the PVC pipe in the planting strip did not pose an unreasonable risk of harm to invitees visiting Defendant's store; and (2) even if it posed an unreasonable risk of harm, Defendant cannot be held liable because the condition was known or obvious to Plaintiff. Dkt. 14 at 7–12.

**B.      Negligence - Duty and Breach**

Defendant first argues that Plaintiff cannot establish the breach element of her negligence claim because there is no evidence of a dangerous condition on Walmart's premises that caused

1  her to fall. Dkt. 14 at 7–9. Specifically, Defendant contends that the PVC pipe protruding from
2  the planting strip was not an unreasonable risk of harm to invitees. Dkt. 14 at 7–9; Dkt. 16 at 2–
3  3.
4        Defendant relies upon *Hoffstatter v. City of Seattle*, 105 Wn. App. 596 (2001), to argue
5  that "a reasonably safe condition is not the same for a parking strip as it is for a sidewalk because
6  their purposes are different." Dkt. 14 at 8 (quoting *Hoffstatter*, 105 Wn. App. at 601). Unlike a
7  sidewalk, which is exclusively devoted to pedestrian use, Defendant asserts that a landscaped
8  planting strip could reasonably be expected to include features like exposed PVC piping as part
9  of the irrigation system. *Id.* Thus, according to Defendant, the exposed PVC pipe did not pose an
10 unreasonable risk of harm and did not breach Defendant's duty of reasonable care. *Id.*
11       The Court agrees that *Hoffstatter* applies and that the standard of care for planting strips
12 containing landscaping features is generally lower than that for sidewalks. As Defendant notes,
13 "[i]t is reasonable to expect that a pedestrian will pay closer attention to surface conditions while
14 crossing a landscaped parking strip than when walking on a sidewalk." *Id.* (quoting *Hoffstatter*,
15 105 Wn. App. at 601). Nevertheless, the Court finds a material dispute of fact as to whether the
16 exposed PVC pipe here was a violation of this admittedly lower standard of care.
17       Despite Defendant's contention that Plaintiff "cannot even identify what she tripped
18 over," Dkt. 14 at 9, Plaintiff has identified the area where she fell and pointed to a plausible
19 culprit—the PVC pipe. *See* Dkt. 13-1 at 5–9, 12 (Plaintiff's testimony that although she did not
20 know at the time what caused her to fall, she struck something hard with her foot while walking
21 through the planter); Dkts. 15-3 at 4–5, 15-4 at 3–4 (Plaintiff's ex-husband returned to the
22 location where she fell within a few days, taking photographs of the PVC pipe); Dkt. 15-2 at 6–7

1  (Plaintiff's expert witness visited the store and took photographs and measurements of the
2  planting strip and PVC pipe, confirming with Plaintiff the location of her fall).
3        The Court agrees with Plaintiff that photographs of the scene show "the PVC pipe firmly
4  placed in the ground directly in the path of where Plaintiff walked and in the direct vicinity of
5  where Plaintiff fell." Dkt. 15 at 14 (citing Dkt. 15-4). Plaintiff's ex-husband averred that he
6  "heard a loud pop [. . .] similar to a hard object being struck" when Plaintiff tripped. Dkt. 15-4 at
7  2–3. Plaintiff testified that "[her] foot hit something very hard" and caused her ankle to break.
8  Dkt. 13-1 at 4, 6. Construed in a light most favorable to Plaintiff, this evidence shows that the
9  exposed PVC pipe posed a risk of harm to invitees and that it caused Plaintiff's injuries.
10       Defendant maintains that such a risk is inherent to the landscaped parking strip, which, it
11 argues, "was not unreasonably dangerous *relative to other parking strips*." Dkt. 14 at 8. In
12 response, Plaintiff points to evidence that other shoppers often traversed the same planter to
13 access the walkway leading to the store. *See* Dkt. 15-3 at 3 (Plaintiff "shopped at the Port
14 Orchard Walmart store frequently" and saw patrons park their cars and walk through the planting
15 strip onto the concrete walkway "many times"); Dkt. 15-2 at 6 (During his site visit, Plaintiff's
16 expert identified "several trails" through the planting strips and noted that open spaces "allow
17 customers to walk through the landscape planter" to the walkway).
18       Satellite images show paved access to the walkways only after thirteen to sixteen vehicle
19 spots, Dkt. 15-2 at 18, supporting Plaintiff's assertion that "the design of the parking lot was
20 such that patrons were invited to walk through the landscape planter" to get to the walkway and
21 avoid "moving traffic in the parking lot[.]" Dkt. 15 at 12. Shoppers must therefore choose
22 between walking through the traffic of the parking lot or, alternatively, crossing over the planting
23 strip to benefit from the relative safety of the walkway. This creates a predictable flow of
24

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

pedestrian traffic that, as recognized in *Hoffstatter*, can raise Defendant's standard of care for the planting strip. 105 Wash. App. at 602 (defendant's use of the sidewalk to display his wares created a duty of care over the parking strip because "it was foreseeable that pedestrians attracted to the display might cross the parking strip to reach it.").

A reasonable fact finder could therefore conclude that an exposed PVC pipe poses an unreasonable risk of harm when it juts from a planting strip that, by design, sees frequent pedestrian traffic. "Whether one charged with negligence has exercised reasonable care is ordinarily a question of fact for the trier of fact." *Johnstone v. City of Seattle*, 8 Wash. App. 2d 1054 (2019) (quoting *Bodin v. City of Stanwood*, 130 Wn.2d 726, 735 (1996)). Thus, a material dispute of fact exists as to whether the PVC pipe was an unreasonable risk of harm and whether Defendant breached its duty to remove or notify invitees of the hazard.

C.     **Implied Assumption of Risk**

Next, Defendant argues that it cannot be negligent because the risk of tripping was "known or obvious" to Plaintiff, and she impliedly accepted that risk by traversing the planting strip. Dkt. 14 at 9–10 (citing Restatement (Second) of Torts § 343A(1), 343(b); *Hvolboll v. Wolff Co.*, 187 Wn. App. 37, 47 (2015)).

But as Defendant explains, establishing an implied assumption of risk requires a subjective understanding "of the presence and nature of the specific risk[.]" *Id.* (citing *Hvolboll*, 187 Wn. App. at 48). Defendant itself acknowledges that, at the time of her fall, Plaintiff did not know of the PVC pipe's existence. Dkt. 14 at 9 ("Plaintiff cannot identify what she tripped over as she testified she has no firsthand knowledge of the alleged object"); Dkt. 16 at 4 ("Plaintiff admits she never saw what caused her to fall, never reported the condition, and never inspected the area firsthand") (citing Dkt. 13-1 at 8–9). Other evidence indicates that the PVC pipe may not

1  have been visible from the angle Plaintiff approached the planting strip. Dkt. 15-2 at 27–29; Dkt.
2  15-4 at 4 ("I was not able to see the white PVC pipe from where [Plaintiff] would have been
3  walking prior to her fall.").

4  Despite this, Defendant argues that Plaintiff assumed the risk of tripping when she
5  "walk[ed] through obviously overgrown shrubbery" and because "the PVC pipe was uncovered
6  and out in the open." Dkt. 14 at 11–12. But the fact that Plaintiff was aware of vegetation in the
7  planting strip does not satisfy the requirement of "proof [she] knew of and appreciated the
8  specific hazard which caused the injury." *Erie v. White*, 92 Wash. App. 297, 304 (1998). A
9  plaintiff "appreciates the specific hazard" only if they actually and subjectively know all facts a
10 reasonable person in the defendant's shoes would disclose, or all facts a reasonable person in the
11 plaintiff's shoes "would want to know and consider when making the decision [at] issue." *Id.*

12 Here, a reasonable plaintiff would want to know about the PVC pipe protruding from the
13 planting strip before deciding whether to cross the strip. Plaintiff maintains that she did not know
14 about the PVC pipe before her fall. Dkt. 13-1 at 5–7; Dkt. 15-3 at 5. Defendant notes that the
15 PVC pipe was uncovered, Dkt. 14 at 5–6, but no evidence suggests that Plaintiff "had full
16 *subjective* understanding" of the risk of the PVC Pipe. *Hvolboll*, 187 Wn. App. at 50 (emphasis
17 added). Although the Court agrees with Defendant that Plaintiff could reasonably expect
18 irrigation infrastructure to exist inside the planting strip, Dkt. 14 at 8, this falls short of
19 appreciating the presence of a particular aspect of that system, such as a protruding PVC pipe.
20 *See Wilson v. Petco Animal Supplies Stores Inc.*, No. 3:23-CV-05633-JNW, 2025 WL 50455, at
21 *1 (W.D. Wash. Jan. 8, 2025) (rejecting store's assumption-of-risk defense where plaintiff
22 "regularly saw inventory on the floor" but was unaware of the precise object she tripped over).

23
24

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

1  Because Plaintiff was unaware of the PVC pipe, she did not assume the risk of tripping over it
2  when she crossed the planting strip, and this defense fails as a matter of law.
3        Even if this court adopted Defendant's broad interpretation of the "specific hazard"
4  requirement to include Plaintiff's awareness of the shrubbery, Defendant's argument still fails. A
5  possessor of land does not escape liability for known or obvious conditions if "the possessor
6  should anticipate the harm despite such knowledge or obviousness." *Champion v. Lowe's HIW*,
7  *Inc.*, 182 Wash. App. 1007 (2014), 2014 WL 2961131, at *4 (quoting Restatement (Second) of
8  Torts §343A). As discussed above, Plaintiff has provided evidence that other shoppers at
9  Defendant's store frequently cross through the planting strip. Dkt. 15-2 at 6; Dkt. 15-3 at 3.[1] The
10 PVC pipe protruded from the ground by one inch and was partially obscured by shrubbery and
11 uneven ground. Dkt. 15-2 at 7, 28–29. Thus, a material dispute of fact exists as to whether
12 Defendant should have anticipated that shoppers might proceed through the planting strip and
13 "fail to protect themselves against the obvious risks" posed by doing so. *Lauwers v. Regal*
14 *Cinemas, Inc.*, 180 Wash. App. 1030 (2014); *see Champion*, 2014 WL 2961131, at *4 ("whether
15 Lowe's should have foreseen that Champion's inattention would cause her to trip and fall onto
16 the pallet is a jury question."). Defendant's argument that Plaintiff assumed the risk of her injury
17 fails.
18 //
19 //

---

[1] Unlike the "shortcut" across a grassy slope in *Lauwers v. Regal Cinemas, Inc.*, 180 Wash. App. 1030 (2014), shoppers here must choose between stepping over a flat, landscaped area with foliage towards the safety of a walkway or walk through traffic in the parking lot to reach the store. In the present instance, it is more likely that Defendant "should have anticipated invitees would fail to protect themselves" from the risks associated with crossing the planting strip. *Id.*

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

### III. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (Dkt. 14) is **DENIED**.

Dated this 25th day of April, 2025.

Grady J. Leupold
United States Magistrate Judge